UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 17 CR 113–4 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| ISRAEL CASTANEDA-SERRANO, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

A federal grand jury indicted Israel Castaneda-Serrano with conspiracy to possess with intent to distribute and distribute 500 grams or more of cocaine, in violation of Title 21, United States Code, Section 846, and possession with intent to distribute 500 grams or more of cocaine, in violation of Title 21, United States Code, Section 841(a)(1). On September 21, 2021, following a four-day trial, a jury returned a guilty verdict against Castaneda-Serrano on both counts and specifically found that the amount of cocaine at issue was at least 500 grams. Castaneda-Serrano now moves for a judgment of acquittal. Castaneda-Serrano challenges the sufficiency of the evidence, arguing that the evidence only established that he was present at the scene of the drug transaction and provided no basis for finding that he played any role in that drug transaction. Because the jury had sufficient evidence to find beyond a reasonable doubt that Castaneda-Serrano conspired to possess and possessed with intent to distribute 500 grams or more of cocaine, the Court therefore denies Castaneda-Serrano's motion for a judgment of acquittal.

## BACKGROUND

On February 23, 2017, according to both the testimony and evidence at trial, Castaneda-Serrano, along with his co-defendants Jose Adrian Gonzalez, Jaime Haro-Campos, Ivan Lara-

Vargas, Luis Olivas-Aranda, and Augustin Mercado, met with an undercover law enforcement office to conduct a narcotics transaction. Prior to this date, from approximately February 10 to February 22, 2017, Gonzalez, Haro-Campos, and an undercover law enforcement officer ("UC-1") had multiple conversations to arrange the February 23 cocaine transaction in which another undercover law enforcement officer, Special Agent David Pina, agreed to purchase four kilograms of cocaine for $150,000. According to the testimony at trial, Gonzalez and Haro-Campos agreed to sell the cocaine to Pina in a Walgreens parking lot in Bensenville, Illinois on February 23. That afternoon, DEA Special Agent Eric Collins conducted surveillance of the transaction and observed Haro-Campos and Mercado as they drove into the Walgreens parking lot. Castaneda-Serrano, Gonzalez, and Pina joined Haro-Campos and Mercado in the parking lot shortly thereafter. Castaneda-Serrano, Haro-Campos, and Mercado then negotiated the logistics of the sale with Pina. Photographs showed Castaneda-Serrano on the phone, standing near Haro-Campos and Mercado.

    Pina testified at trial that, during the negotiations, Castaneda-Serrano told Pina that he had a sample of cocaine opened for Pina to see. Using his own car, Castaneda-Serrano then drove Pina, Mercado, and Haro-Campos to the 100 block of North Center Street in Bensenville, where Olivas-Aranda and Lara-Vargas waited with four kilograms of cocaine. A package containing one kilogram of cocaine had a cut in the corner so Pina could observe that it indeed consisted of powder cocaine. Pina agreed to the purchase and asked where Castaneda-Serrano wanted to count the money. According to Pina, Castaneda-Serrano confirmed that he would count the money back at the Walgreens parking lot. They then drove back to the Walgreens parking lot to count Pina's money. After they returned to the parking lot, officers arrested

Castaneda-Serrano. They also seized four brick-shaped packages containing cocaine, weighing 4,001 grams, in connection with the planned transaction.

Castaneda-Serrano's trial began on September 15, 2021 and lasted until September 21, 2021. The evidence at trial included the testimony of several witnesses, transcripts of recorded calls, photographs, cell phone service provider records, and stipulations. After the government rested its case, Castaneda-Serrano orally moved for a judgment of acquittal. The Court denied the motion. Castaneda-Serrano then put on five witnesses at trial, but did not testify on his own behalf. All five witnesses testified that they did not hear Castaneda-Serrano's voice on any of the recorded calls, which contradicted Pina's testimony identifying Castaneda-Serrano on those calls. The jury thereafter found Castaneda-Serrano guilty on both counts.

## LEGAL STANDARD

After a guilty verdict, a defendant may move for a judgment of acquittal on the basis that "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). Evidence is insufficient to sustain a conviction only if "after viewing the evidence in the light most favorable to the Government, the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Wrobel*, 841 F.3d 450, 454 (7th Cir. 2016) (citation omitted); *see also United States v. Dewitt*, 943 F.3d 1092, 1096 (7th Cir. 2019) ("We 'consider the evidence in the light most favorable to the Government,' and will reverse 'only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" (citation omitted)). The Court examines "the evidence as a whole," including any evidence the defendant has presented in his own defense. *United States v. Wilson*, 879 F.3d 795, 802 (7th Cir. 2018). "When challenging a conviction based on sufficiency of the evidence, a defendant bears a heavy burden that is nearly insurmountable."

*United States v. Kohli*, 847 F.3d 483, 489 (7th Cir. 2017) (citation omitted) (internal quotation marks omitted). The Court will sustain a conviction so long as "*any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. O'Brien*, 953 F.3d 449, 456 (7th Cir. 2020) (emphasis added) (citation omitted).

## ANALYSIS

To obtain a conviction under 21 U.S.C. § 841(a)(1), the government must prove knowing and intentional possession of a controlled substance, possession with the intent to distribute that substance, and knowledge that the item is indeed a controlled substance. *United States v. Mojica*, No. 12 CR 755-5, 2016 WL 3268991, at *5 (N.D. Ill. June 15, 2016); *United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008). And to prove a conspiracy under 21 U.S.C. § 846, "[t]he government must demonstrate an understanding – explicit or implicit – among co-conspirators to work together to distribute drugs to third parties." *United States v. Speed*, 656 F.3d 714, 717 (7th Cir. 2011).

Castaneda-Serrano argues that the government failed to present sufficient evidence to prove him guilty of the crimes charged beyond a reasonable doubt. Specifically, Castaneda-Serrano argues that the government (1) did not establish his role in the transaction but rather only showed that he was present at the scene of a drug transaction; (2) failed to prove Castaneda-Serrano ever possessed, either directly or indirectly, any controlled substance involved in the case; and (3) did not establish that he entered into any agreement to distribute the cocaine.

Initially, Castaneda-Serrano contends that the government did not sufficiently tie him to the transaction because Pina's voice identification of Castaneda-Serrano on the audio recordings is not credible. He points to the fact that he presented five witnesses who testified that they did not hear his voice on the recordings, arguing that, unlike Pina, these witnesses were credible and

4

their testimony went unchallenged. But in making this argument, Castaneda-Serrano improperly asks the Court to evaluate the credibility of these witnesses. *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989) ("It is axiomatic that, absent exceptional circumstances, issues of witness credibility are to be decided by the jury, not the trial judge. In general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." (citations omitted)). *United States v. Giovenco*, No. 11 CR 316-3, 2013 WL 4552338, at *1 (N.D. Ill. Aug. 28, 2013) (in deciding a Rule 29 motion, courts cannot "re-weigh the evidence or judge the witnesses' credibility"), *aff'd*, 773 F.3d 866 (7th Cir. 2014).

After reviewing the evidence, the Court finds that the jury had a sufficient basis to credit Pina's testimony identifying Castaneda-Serrano as one of the speakers in the recorded transactions and reject the testimony of Castaneda-Serrano's witnesses. Pina testified that he heard Castaneda-Serrano's voice in person at the Walgreens parking lot. He further testified that he had a clear opportunity to listen to the audio recordings, albeit later in time, reviewed them several times, and compared the voices on the recordings with other recorded calls and his own recollection of his conversations with Castaneda-Serrano on the day of the transaction. This sufficed to allow for a voice identification. *See United States v. Trent*, 863 F.3d 699, 707 (7th Cir. 2017) ("[A] witness who had heard a voice in a recorded phone conversation could later identify that voice as the defendant's after speaking with the defendant during his arrest and post-arrest interview."). As Castaneda-Serrano points out, his witnesses disagreed with Pina's identification, testifying that they did not hear Castaneda-Serrano's voice on any of the recordings. On cross-examination, the government highlighted these witnesses' biases and motivations to testify in such a way given that four out of the five witnesses were Castaneda-Serrano's family members. Because the jury reasonably could credit Pina over Castaneda-

5

Serrano's witnesses, the Court does not find Castaneda-Serrano's challenge to the voice identification evidence a reason to disturb the jury's finding. *See United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000) ("As long as there is a reasonable basis in the record for the jury's verdict, it must stand."); *Kuzniar*, 881 F.2d at 470 ("It is axiomatic that, absent exceptional circumstances, issues of witness credibility are to be decided by the jury, not the trial judge.").

Further, the jury had before it other evidence that undermines Castaneda-Serrano's renewed argument that he was simply a bystander to the drug transaction. Pina testified at trial that he negotiated the narcotics transaction with Castaneda-Serrano and that Castaneda-Serrano agreed to show Pina the cocaine before exchanging money. Pina also testified that Castaneda-Serrano drove Pina to a different location where others held the drugs and, after Pina observed the cocaine, drove him back to the Walgreens to count the money. Moreover, the jury heard stipulations and testimony regarding service provider records that showed Castaneda-Serrano communicating exclusively that day with Olivas-Aranda and Lara-Vargas, the individuals who had the cocaine in their possession.

Next, with regard to Castaneda-Serrano's assertion that he never possessed the cocaine, "[a] defendant need not be caught red-handed in order to satisfy the possession element." *United States v. Starks*, 309 F.3d 1017, 1022 (7th Cir. 2002); *United States v. Martinez*, 937 F.2d 299, 305 (7th Cir. 1991). Rather, the government can prove constructive possession by showing that the defendant "exercised ownership, dominion, authority, or control over the illicit material." *Starks*, 309 F.3d at 1022; *United States v. Garrett*, 903 F.2d 1105, 1112 (7th Cir. 1990). As discussed above, Pina testified that Castaneda-Serrano indicated that he had a sample of cocaine ready for Pina to see and that Castaneda-Serrano drove Pina to where Olivas-Aranda and Lara-Vargas were holding the cocaine in his own car. This provided a sufficient basis for the jury to

find that Castaneda-Serrano had possession over the drugs, as it showed he had the authority to determine their disposition. *See United States v. Windom*, 19 F.3d 1190, 1200 (7th Cir. 1994) ("When the crime involves an intent to distribute or dispense drugs, this court has found that an accused only has control of narcotics when he has the authority . . . to possess and determine the disposition of them." (citations omitted)); *see also United States v. Staten*, 581 F.2d 878, 883 (D.C. Cir. 1978) ("[T]he critical inquiry for judges is whether the factfinder can reasonably conclude from the proof that the accused likely had some appreciable ability to guide the destiny of the drug.").

Finally, the jury had sufficient evidence to support a finding of conspiracy. Evidence presented at trial showed Castaneda-Serrano communicated regularly with Olivas-Aranda and Lara-Vargas on the day of the transaction as well as drove Pina with Mercado and Haro-Campos to see a sample of the cocaine. And, as shown by the evidence at trial, Castaneda-Serrano worked with Lara-Vargas and Olivas-Aranda to show Pina the cocaine. This evidence is therefore sufficient to support the jury's finding of conspiracy. *See Mojica*, 2016 WL 3268991, at *4 ("[T]he jury was presented with extensive testimony regarding photos of Defendant's apartment that had purportedly been used as a stash house as well as the physical evidence that was retrieved from the search of the apartment, including the baggies containing cocaine and money. The Court concludes that this evidence is sufficient to support a finding of conspiracy.").

Therefore, after considering Castaneda-Serrano's arguments and construing the evidence in the light most favorable to the government, the Court finds that the jury had sufficient evidence to convict Castaneda-Serrano on both counts charged in the indictment.

7

## CONCLUSION

For the foregoing reasons, the Court denies Castaneda-Serrano's motion for judgment of acquittal [388].

Dated: January 14, 2022

_____
SARA L. ELLIS
United States District Judge